IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDISK CORP.,                                                    ORDER

                    Plaintiff,                            07-cv-605-bbc

       v.

ITE TECHNOLOGIES, INC.,
ZOTEK ELECTRONIC CO., LTD.,
ZODATA TECHNOLOGY LTD.,
KINGSTON TECHNOLOGY CO., INC.,
KINGSTON TECHNOLOGY CORP.,
BUFFALO, INC., MELCO HOLDINGS, INC.,
BUFFALO TECHNOLOGY (USA) INC.,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SANDISK CORP.,                                                    ORDER

                    Plaintiff,                            07-cv-607-bbc

       v.

ITE TECHNOLOGIES, INC.,
ZOTEK ELECTRONIC CO., LTD.,
ZODATA TECHNOLOGY LTD.,
KINGSTON TECHNOLOGY CO., INC.,
KINGSTON TECHNOLOGY CORP.,

1

BUFFALO, INC., MELCO HOLDINGS, INC.,
BUFFALO TECHNOLOGY (USA) INC.,
IMATION CORP., IMATION ENTERPRISES
CORP., MEMOREX PRODUCTS, INC.,
ADD-ON TECHNOLOGY CO.,

                    Defendants.[1]

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        Plaintiff SanDisk Corp. brought these two patent infringement suits against

defendants ITE Technologies, Inc., Zotek Electronic, Ltd., Zodata Technology Ltd., Kingston

Technology Co., Inc., Kingston Technology Corp., Buffalo, Inc., Melco  Holdings, Inc.,

Buffalo Technology (USA) Inc., Imation Corp., Imation Enterprises Corp., Memorex

Products, Inc. and Add-On Technology Co. and others (since dismissed) in 2007 in an effort

to enforce a group of patents related to flash memory.  The cases were consolidated and

stayed after I concluded that one set of patents was before the International Trade

Commission and the other set involved overlapping issues.  Now that the stay has been

lifted, the parties have filed a number of motions.  Two are before the court for decision.

First, plaintiff has moved for leave to amend the complaint to add new claims related to six

patents issued after the stay was imposed.  Dkt. ##475 (in 07-cv-605-bbc) and 453 (in 07-

_____

        [1]  Several defendants have been dismissed pursuant to stipulations of dismissal.  In
addition, defendant USBest Technology, Inc. is now known as ITE Technology, Inc.  I have
amended the caption to reflect these changes.

                                    2

cv-607-bbc).  Second, defendant ITE Technologies has moved to dismiss plaintiff SanDisk

Corp.'s claims against it on the ground that the court lacks personal jurisdiction over ITE.

Dkts. ## 318 (in 07-cv-605-bbc) and 295 (in 07-cv-607-bbc).

Because I am not persuaded that "justice . . . requires" amending the complaint at this

juncture, I will deny plaintiff's motion for leave to amend the complaint.  Plaintiff may bring

a new lawsuit to pursue its new claims.  As for defendantITE's motion to dismiss for lack of

personal jurisdiction, I will grant the motion because plaintiff has failed to show that ITE

placed its allegedly infringing parts into an "established distribution channel" ending in

Wisconsin.  (Other defendants no longer in the case also filed motions to dismiss for lack

of personal jurisdiction, dkts. ## 182, 301 and 360 in in 07-cv-605-bbc and ##277 and

337 in 07-cv-607-bbc.  Those motions were mooted when plaintiff dismissed its claims

against the defendants.)

## I.  MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiff has requested leave to file an amended complaint to assert claims arising out

of six new continuation patents.  (Plaintiff adds that it also seeks to amend to "narrow the

issues in these actions," but explains that it simply wishes to clean up the pleadings by

removing certain parties, claims and theories that are no longer part of the case.)

Defendants oppose the motion, contending that it would be difficult to perform all the

3

discovery it needs to prepare for a February 2011 trial if it had to deal with six new patents along with the six patents that are now in this case. Although plaintiff points out that some of defendant's concerns may be exaggerated, I agree that doubling the patents at issue is bound to put a strain on an already tight schedule.

Even after several stipulations and dismissals, the consolidated action still makes for a big case. In 07-cv-605-bbc, plaintiff contends that defendants ITE Technologies, Inc., Zotek Electronic Co., Ltd., Kingston Technology Co., Inc., Kingston Technology Corp., Buffalo, Inc., Melco Holdings, Inc. and Buffalo Technology (USA) Inc. are infringing its United States Patents Numbers 6,149,316 (the '316 patent) and 6,757,842 (the '842 patent). In 07-cv-607-bbc, plaintiff contends that those same defendants and defendants Imation Corp., Imation Enterprises Corp., Memorex Products, Inc. and Add-on Technology Co. are infringing its United States Patents Numbers 5,719,808 (the '808 patent); 6,763,424 (the '424 patent); 6,426,893 (the '893 patent); and 7,137,011 (the '011 patent).

Plaintiff points out that the new patents involve the same specifications as other patents already in play. Nonetheless, each new claim asserted requires a separate analysis for infringement and requires separate investigation into prior art and prosecution history for any invalidity defense.

Next, plaintiff argues that a single trial on all twelve patents could be more efficient. That may be so, but even that is unclear. To the extent issues overlap in the case (as plaintiff

4

contends), a resolution of the parties' disputes related to the first six patents might well resolve those issues in any subsequent case involving the new patents, or at least narrow the ones that must be tried..

Although plaintiff's motion does not appear to be brought in bad faith (plaintiff brought the motion within a reasonable time after the stay was lifted), I am not persuaded that this case should be expanded beyond its original boundaries.  The parties have limited time in which to perform the required discovery on the first six patents and there appears to be no great need to include all twelve patents in the same lawsuit.  Plaintiff is free to file a new lawsuit with respect to the new claims, but I will deny its motion for leave to amend the complaint in this case.  (With respect to plaintiff's request to clean up the pleadings, the request is unnecessary.)

## II.  MOTION TO DISMISS UNDER FED. R. CIV. P. 12(b)(2)

Defendant ITE has moved to dismiss plaintiff's claims against it (in both 07-cv-605-bbc and 07-cv-607-bbc) for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2). Because I will decide the motion on written submissions alone, plaintiff "need make out only a prima facie case of personal jurisdiction."  Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003) (citation omitted); see also Pennington Seed, Inc. v. Produce Exchange No. 299, 457 F.3d 1334, 1344 (Fed. Cir. 2006).  To decide

5

this question, I accept all well-pleaded allegations in the complaint as true, unless controverted by ITE's affidavits, and decide any conflicts in favor of plaintiff.  Purdue Research Foundation, 338 F.3d at 782; see also Pennington Seed, Inc., 457 F.3d at 1344.

With this standard in mind, from plaintiff's complaint and the parties' affidavits, I find the following facts to be material and undisputed for the sole purpose of deciding this motion.

## UNDISPUTED FACTS

On October 24, 2007, plaintiff filed two separate complaints against ITE (then known as US Best Technology, Inc.).  Plaintiff alleged that ITE's flash controllers and flash memory products infringed five of its patents (the '316 patent, the '842 patent, the '808 patent, the '424 patent, the '893 patent and the '011 patent).

Plaintiff is a Delaware corporation with its principal place of business in Milpitas, California.  Plaintiff designs, manufactures and markets flash storage products, including memory cards, USB drives and media players.  These products include plaintiff's patented flash memory and controller technology.

Defendant ITE is a company organized under the laws of Taiwan, with its principal place of business in Hsinchu City, Taiwan.  ITE designs, develops, manufactures and sells controllers, a component part of flash memory products.  Flash controllers must be

6

incorporated into some form of flash memory product before they can be sold to the end user.

ITE has never had any physical presence in Wisconsin. In addition, ITE has never been qualified, authorized or licensed to do business in Wisconsin and has not imported, shipped or otherwise delivered any flash memory product or samples to Wisconsin. ITE has no knowledge that any of its products arrived here or were sold in Wisconsin as a stand-alone product.

ITE has not advertised or engaged in any marketing activities targeting retailers anywhere in Wisconsin or in the United States. ITE maintains a website open to anyone, http://www.ite.com.tw/EN/index.aspx, which advertises its products and provides general information about ITE's businesses and products. The website is "non-interactive." Customers are not able to purchase ITE's products through the website or view product prices. There is no Wisconsin-specific content on the website.

Possession and title for ITE's flash memory products are transferred from ITE to its customers almost exclusively in Asia and its distribution contracts are predominantly with distributors in Asia. Any sale by ITE to any United States company takes place in Taiwan to a Taiwan-based branch of that company, with delivery taking place in Taiwan. Before October 2007, a company that ITE later acquired called Afa Technologies made sales to customers in the United States. These sales made up 4.472% of Afa's total sales and all were

7

made in California.

In 2007, ITE sold its accused controllers to Imation Corporation and Transcend Information Inc. Imation and Transcend incorporated the flash controllers into flash memory products and sold the end product to customers. Imation's 2007 website lists retailers where its products can be purchased. The list included Target, a store with more than thirty locations in Wisconsin. Transcend's website lists the Transcend Online Store as a place to purchase its products. Around the time plaintiff filed its original complaint, its agents purchased three Imation flash products at a Target store in Wisconsin and six Transcend flash products through Transcend's online store shipped to a Wisconsin address. These nine flash products contained ITE controllers accused of infringement.


DISCUSSION

To establish personal jurisdiction over a defendant, a plaintiff must show both that (1) the defendant is subject to jurisdiction under the long-arm statute of the state in which the federal court sits (in this case Wisconsin) and (2) exercise of jurisdiction would be consistent with the limitations of the due process clause. Trintec Industries, Inc. v. Pedre Promotional Products, Inc., 395 F.3d 1275, 1279 (Fed. Cir. 2005). (As the parties acknowledge, this court applies Federal Circuit law to decide a question of personal jurisdiction in a patent infringement case. Beverly Hills Fan Co. v. Royal Sovereign Corp.,

8

21 F.3d 1558, 1564-65 (Fed. Cir. 1994).)

The first prong may be passed over quickly.  Wisconsin's long-arm statute provides jurisdiction for "any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant" in which "[p]roducts, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."  Wis. Stat. § 801.05(4)(b).  In this case, there is evidence that (1) plaintiff bought allegedly infringing devices in Wisconsin at retail store and online, Beverly Hills Fan, 21 F.3d at 1571 (injury occurs where infringing sales made); (2) these sales "arose out of" defendant's foreign acts because defendant manufactured the allegedly infringing controllers found in the devices outside of Wisconsin; and (3) these devices were "used or consumed" within Wisconsin in the ordinary course of trade at the time of the injury because plaintiff made purchases of the devices at a retail store.  Although plaintiff's purchase of infringing devices is self-inflicted and therefore not counted as an "injury," Ricoh Co., Ltd. v. Asustek Computer, Inc., 481 F. Supp. 2d 954, 959-60 (W.D. Wis. 2007), plaintiff's purchase at a retail store is evidence that *others* could make the same purchase in the state, which is enough to establish a prima facie case.  LG Electronics, Inc. v. Quanta Computer Inc., 520 F. Supp. 2d 1061, 1068 (W.D. Wis. 2007).

The due process prong of the analysis is trickier.  In this case, plaintiff seeks to establish "specific jurisdiction," as opposed to "general jurisdiction," Helicopteros Nacionales

9

de Colombia, S.A. v. Hall, 466 U.S. 408 (1984).  The general test for determining whether jurisdiction over an out-of-state defendant comports with due process is whether (1) the defendant purposefully directed its activities at residents of the forum state; (2) the claim arises out of or relates to the defendant's activities with the forum state; and (3) assertion of personal jurisdiction is reasonable and fair.  Electronics For Imaging, Inc. v. Coyle, 340 F.3d 1344, 1350 (Fed. Cir. 2003).  Plaintiff bears the burden to establish that defendant has "minimum contacts" with the state related to the claim (the first two prongs), and upon this showing, defendant must prove that the exercise of jurisdiction is unreasonable (the third prong).  Id.

Plaintiff relies on the "stream of commerce" theory to support its argument that ITE's contacts with Wisconsin are sufficient.  In World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297-98 (1980), the Supreme Court stated that personal jurisdiction may be exercised "over a corporation that delivers its products into the stream of commerce with the expectation that they will be purchased by consumers in the forum state."  The Court did not rely on that theory in Woodson (it did not apply in that case), but addressed the theory at length in Asahi Metal Industry Co., Ltd. v. Superior Court, 480 U.S. 102 (1987). Unfortunately, the Court could not agree on the contours of the theory, with four justices taking the position that due process is met only if the defendant's actions are "purposefully directed" toward the forum state, id. at 112 and four justices arguing that due process

10

requires only that the defendant place its products into a "regular and anticipated flow of products from manufacture to distribution to retail sale" with the awareness that the final product is marketed in the forum state.  Id. at 117.

To date, the Court of Appeals for the Federal Circuit has managed to avoid taking a stance on the question because each time the question is raised, the contacts satisfy the more rigorous standard, meaning that application of either standard leads to the same result. Commissariat A L'Energie Atomique v. Chi Mei Optoelectronics Corp., 395 F.3d 1315, 1322 n.7 (Fed. Cir. 2005); Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 428 (Fed. Cir. 1996); Beverly Hills Fan, 21 F.3d at 1566.  I will avoid deciding the question, too, but for different reasons.  As it turns out, in this case, the contacts do *not* satisfy the more rigorous standard, but plaintiff does not argue that the less restrictive standard should be applied or describe how it would play out in this case.  Instead, plaintiff contends that the facts support a finding of minimum contacts under the more rigorous standard, as set out in Beverly Hills Fan.

In Beverly Hills Fan, 21 F.3d at 1565, the court of appeals explained that the more rigorous stream of commerce standard is satisfied when a defendant "purposefully ship[s]" an accused product into the forum state through an "established distribution channel."  The case involved a foreign defendant that manufactured allegedly infringing fans and a domestic defendant that distributed the fans to a third party company with six retail stores in the

11

forum state.  Id. at 1560.  The plaintiff submitted evidence that there were at least 52 allegedly infringing fans in those retail stores in the state and the fans came with a manual identifying the defendant distributor (Royal) as the source of the product and providing a warranty that Royal would honor.  Id.

The court concluded that these facts were sufficient to allow an inference that defendants developed an "ongoing, and obviously intentional" commercial relationship with the company having in-state retail stores, the forum state was a reasonably foreseeable "termination point" of the distribution channel, id. at 1561, and defendants "acted in concert" to place the allegedly infringing products into the stream of commerce, id. at 1566.  From these facts, the court determined that due process concerns had been met, concluding that defendants' "conduct and connections with the forum state were such that they should reasonably have anticipated being brought into court there."  Id. at 1566.

Plaintiff contends that ITE placed its products into an "established distribution channel" set up from ITE to Transcend and Imation to retail stores and individuals in Wisconsin.  However, the evidence fails to support a finding that ITE was truly "part" of that channel.  Unlike the foreign defendant in Beverly Hills Fan, which sold its fans through intermediaries, ITE sells its component products to Imation and Transcend to incorporate into end products.  This difference matters for two reasons.  First, because ITE merely sold its parts to Transcend and Imation (rather than used them as distributors), it would not be

12

reasonable to infer from their relationship that ITE was aware of or involved in Transcend's and Imation's distribution channels.  Cf. id. at 1568 (distinguishing Max Daetwyler Corp. v. R. Meyer, 762 F.2d 290, 298 (3d Cir. 1985), which found minimum contacts not present, in part because in that case it was doubtful whether manufacturer knew "distributor" had made shipments into state).

Second, even if ITE could be said to know where Imation and Transcend shipped *their* products, ITE still might not know where *its* products end up.  ITE's products do not simply "pass through" Imation and Transcend to end users, as was the case in Beverly Hills Fan. Instead, those companies incorporate ITE's components into larger products.  To allow an inference to be drawn that it is reasonably foreseeable that ITE's parts will show up in Wisconsin, there must be evidence that (1) Transcend and Imation's products are likely to end up in Wisconsin and (2) either ITE's products can be expected to be found in a large number of Imation's or Transcend's products overall or at least can be expected to be found in the batch likely to arrive in Wisconsin.  Plaintiff's showing falls short of this.

Plaintiff cites a few cases in which defendant component-part manufacturers have been subjected to personal jurisdiction under the "stream of commerce" theory.  LG Phillips LCD Co. v. Chi Mei Optoelectronics, Corp., 551 F. Supp. 2d 333 (D. Del. 2008); Motorola, Inc. v. PC-Tel, Inc., 58 F. Supp. 2d 349, 355 (D. Del. 1999); Nidec Corp. v. LG Innotek Co., 2008 WL 7048882 (E.D. Tex. Dec. 11, 2008).  However, each case is

distinguishable in that the plaintiffs were able to make a showing that the defendant could reasonably foresee that its component parts would end up in the forum state because of the sheer scale of the defendant's distribution.  In <u>LG Phillips</u>, 551 F. Supp. 2d at 340-41, the court relied on the fact that the defendant had a long-term agreement with Dell, had shipped "substantial quantities" of product to the United States for incorporation and was the fourth largest manufacturer of the component part.  Plaintiff has provided no similar evidence of the size of ITE's business or its quantities shipped.  All it provides is a handful of devices purchased here.

In <u>Motorola</u>, 58 F. Supp. 2d at 352, 355, the court pointed out that the defendant knew that its products were integrated into a variety of products manufactured by "well-known multi-national corporations" and "put into world-wide distribution networks" and although the defendant did not control those networks, it did require its customers to enter into a licensing agreement that effectively required collaboration from "all parties from the beginning to the end of the distribution network."   Plaintiff has adduced no evidence to suggest that ITE collaborated in any way in the distribution of the end-products.

Finally, in <u>Nidec</u>, 2008 WL 7048882, at *6, there was evidence that defendant sent its allegedly infringing products to a "global hub" in the United States for widespread sale at nationwide retailers.  In this case, ITE sold its product to other companies to assemble into a larger product.  As I explained above, regardless whether *Imation* may have used a

14

nationwide retailer (Target), there is no evidence that ITE was even aware of this, or if it knew, had reason to believe that *its* parts could end up in a Wisconsin Target.

Because plaintiff fails to provide evidence that would allow an inference to be drawn that ITE was part of an established distribution channel ending in Wisconsin, it has failed to to make a _prima_ _facie_ showing of the minimum contacts needed to allow this court to exercise personal jurisdiction over ITE without offending due process.  Therefore, it is not necessary to decide whether exercise of jurisdiction is reasonable and fair.  I will grant ITE's motion to dismiss for lack of personal jurisdiction.

ORDER

IT IS ORDERED that

1.  The motion for leave to amend the complaint filed by plaintiff SanDisk Corp., dkt. ##475 (in 07-cv-605-bbc) and 453 (in 07-cv-607-bbc), is DENIED.

2.  The motion to dismiss for lack of personal jurisdiction filed by defendant ITE Technologies, Inc., dkt. ##318 (in 07-cv-605-bbc) and 295 (in 07-cv-607-bbc), is GRANTED.  Plaintiff's claims against ITE are DISMISSED for lack of personal jurisdiction.

3.  Motions to dismiss for lack of personal jurisdiction filed by parties no longer in the case, dkts. ## 182, 301 and 360 (in 07-cv-605-bbc) and ##277 and 337 (in 07-cv-607-

bbc) are DENIED as moot.

Entered this 2nd day of April, 2010.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

16